UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| JAMES A. MELLON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No. | 3:15-cv-00450 |
| | ) | | REEVES/POPLIN |
| DARREN SETTLES, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

Petitioner, James A. Mellon, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his confinement under a state-court judgment of conviction of first-degree felony murder and especially aggravated robbery [Doc. 2]. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 2] will be **DENIED** and this action will be **DISMISSED**.

### I. PROCEDURAL HISTORY

Petitioner pled guilty to first-degree felony murder and especially aggravated robbery and waived his right to a trial by jury. *State v. Mellon*, No. E1999-01505-CCA-R3DD, 2002 WL 31086317, at *1 (Tenn. Crim. App. Sept. 19, 2002), *rev'd*, 118 S.W.3d 340 (Tenn. 2003). As part of the plea agreement, the State agreed to recommend concurrent sentences on these charges of life imprisonment with the possibility of parole and twenty-five years imprisonment, respectively, in exchange for Petitioner's agreement to testify truthfully and consistent with his previous statement at the trials of his codefendants. *Id*. Thereafter, Petitioner refused to testify as required by his plea agreement, instead, moving to withdraw his guilty pleas. *Id*. That motion to withdraw was denied, the State withdrew its sentencing recommendation, and a sentencing hearing was held.

*Id*. The jury, at the sentencing hearing, found the statutory aggravating circumstance that Petitioner had previously been convicted of a felony involving violence to the person and sentenced Petitioner to death. *Id*. For the conviction of especially aggravated robbery, Petitioner was sentenced to a consecutive term of twenty-five years imprisonment. *Id*. The trial court then denied Petitioner's petition for writ of coram nobis [Doc. 18 Attachment 16–17].

Following an appeal, the Tennessee Court of Criminal Appeals (TCCA) affirmed Petitioner's convictions and sentences for the felony murder. *See*, *State v. Mellon*, No. E1999-01505-CCA-R3-DD, 2002 WL 31086317 (Knoxville, Sept. 19, 2002). On automatic appeal, the Tennessee Supreme Court (TSC) concluded that Petitioner was not adequately informed of the consequences if he should breach the plea agreement and held that Petitioner's pleas were not knowingly and voluntarily entered, and thus the subsequent sentence denied him due process of law. *State v. Mellon*, 118 S.W.3d 340 (Tenn. 2003). The TSC reversed the decision of the TCCA and remanded the case to the trial court for further proceedings. *Id*.

On remand, Petitioner filed a motion to suppress statements he gave to the police, and following a hearing, the trial court denied the motion by written order dated December 14, 2004. *State v. Mellon*, No. E2006-00791-CCA-R3CD, 2007 WL 1319370, at *1 (Tenn. Crim. App. May 7, 2007). The jury convicted Petitioner of first-degree felony murder committed during the perpetration of aggravated robbery and especially aggravated robbery. *Id*. Although the State had been seeking a sentence of life without the possibility of parole for the murder, the jury was unable to agree unanimously on that punishment, so instead, the trial court sentenced Petitioner to life in confinement. After a second sentencing hearing, the trial court sentenced Petitioner to twenty-three years for the especially aggravated robbery conviction and ordered that it be served consecutively to the life sentence. *Id*.

On appeal, the TCCA affirmed his convictions and sentences. *Mellon v. State*, No. E201602040CCAR3PC, 2017 WL 3085435, at *2 (Tenn. Crim. App. July 20, 2017), *appeal denied* (Oct. 3, 2017). The TSC denied discretionary review of this decision. *Id.*

Next, Petitioner timely filed a pro se petition for post-conviction relief from the judgments [Doc. 18 Attachments 51–53]. The post-conviction court appointed counsel who filed an amended petition [*Id.*]. While represented by counsel, Petitioner filed a pro se amended petition and a motion for appointment of new counsel. [*Id.*]. The post-conviction court granted the motion and appointed Petitioner new counsel [*Id.*]. The post-conviction court held an evidentiary hearing on all claims asserted in all of Petitioner's petitions for post-conviction relief, after which the court denied relief [*Id.* at Attachments 55–56]. On appeal, the TCCA affirmed the denial of post-conviction relief and the TSC declined discretionary review of this decision [*Id.* at Attachments 57–58].

Petitioner filed a petition for a writ of habeas corpus on August 21, 2015 [Doc. 2]. Respondent filed a response in opposition to Petitioner's pleading, as well as a copy of the state record [Docs. 18, 19]. Petitioner filed a reply to Respondent's response [Doc. 25]. This matter is now ripe for the Court's review.

## II. BACKGROUND

The TCCA summarized the facts of this case in its opinion on direct appeal as follows:

> Taken in the light most favorable to the State, the evidence at trial revealed that on the night of August 23, 1997, David Jones picked up the twenty-one-year-old appellant; fourteen-year-old Ernest Rogers; and Anthony "T-Bone" Jones, who was unrelated to David Jones. The group planned to rob the "dope man" and drove to a drug house in Knoxville but found it empty. In the early morning hours of August 24, 1997, David Jones drove the group to west Knoxville. They were searching for a person to rob and spotted the victim near a gas station payphone. The victim had just paged a friend, was sitting in his Chevrolet Camaro with the driver's door open, and was waiting for the friend to call him at the payphone. David Jones pulled up behind the victim's car, and the appellant and Ernest Rogers got out and approached the victim's Camaro.

The appellant pointed a nine millimeter pistol at the victim, and the victim began pulling items out of his pockets. Anthony Jones, who had been waiting impatiently in David Jones' car, got out and ran up to the victim's car. David Jones heard gunshots and saw the appellant bend down. Anthony Jones, Ernest Rogers, and the appellant ran back to David Jones' car, and the group drove away.
. . .

A police investigation resulted in the arrests of the four individuals, and the police found nine-millimeter handguns at Anthony Jones' and Ernest Rogers' homes. Forensic analysis of two cartridge cases recovered from the crime scene and two bullets recovered from the victim showed that the casings and bullets were fired from the handgun police found in Anthony Jones' home. In interviews with police on August 25 and 26, 1997, the appellant admitted participating in the robbery but said he never intended for the victim to be killed.

*Mellon*, 2007 WL 1319370, at *1.

## III. STANDARD OF REVIEW

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, which amended § 2254, sets forth "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). By this standard, when a state court adjudicates a claim on the merits, habeas relief is available only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's ruling is an

4

"unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from Supreme Court precedent but unreasonably applies it to the facts of the particular state prisoner's case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

Under AEDPA, a habeas petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet," "highly deferential," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Federal habeas review is also limited by the doctrine of procedural default. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. See, e.g., *Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas

review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; See also *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. See *id.* at 753. The "prejudice" sufficient to overcome a default must be actual, not merely a possibility of prejudice. See, *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted).

### IV. PETITIONER'S ALLEGATIONS

Petitioner's § 2254 habeas corpus petition raises the following claims for relief:

1. Trial counsel provided ineffective assistance by:

    a. Failing to file a motion to suppress Petitioner's statement to Lieutenant Lyon [Doc. 2 p. 1];

    b. Failing to properly investigate and prepare for trial [*Id.* at 1–2];

    c. Failing to raise, prepare, file, and litigate all pertinent and significant issues regarding Petitioner's case [*Id.* at 2];

    d. Failing to object when the trial court stopped counsel from questioning a witness [*Id.* at 2];

    e. Failing to move for a judgment of acquittal after the prosecutor stated that Petitioner did not have the intent to kill [*Id.* at 2–3];

    f. Failing to file a motion to dismiss the indictment as void [*Id.* at 3];

    g. Failing to file a motion to dismiss the testimony of David Jones [*Id.*];

    h. Failing to object when the prosecutor said Petitioner was not entitled to jury instructions on lesser-included offenses [*Id.*];

    i. Failing to move to have the trial court recuse itself [*Id.*];

6

j. Failing to object to the trial court's refusal to permit Petitioner to submit evidence of mitigating factors [*Id.*];

k. Failing to challenge Petitioner's sentence as excessive and inappropriate [*Id.*];

l. Failing to move to dismiss the case based on the State's failure to comply with Tennessee Rule of Criminal Procedure 16 [*Id.* at 4];

m. Failing to move the trial court to dismiss the prosecutor [*Id.*];

n. Failing to move to obtain a bill of particulars [*Id.*];

o. Failing to challenge the unconstitutional selection of the grant jury [*Id.*];

p. Failing to ask potential jurors whether they knew or were related to the victim, trial counsel, the prosecutor, trial judge, or any witnesses testifying in the case [*Id.*];

q. Failing to object when the State asked numerous leading and untrue questions [*Id.*];

2. Appellate counsel provided ineffective assistance by failing to ensure that a complete and accurate transcript of trial was prepared on direct appeal [*Id.* at 4];

3. The State committed prosecutorial misconduct by:

    a. Withholding evidence in violation of Tennessee Rule of Criminal Procedure 16 [*Id.* at 5];

    b. Improperly interrupted a witness during trial counsel's cross-examination of the witness [*Id.*];

    c. Making false statement to the trial court [*Id.*];

    d. Prosecuting Petitioner despite losing jurisdiction to prosecute him after withholding evidence [*Id.*];

    e. Failing to disclose all favorable evidence to Petitioner, which prevented him from presenting all issues to the jury [*Id.*];

    f. Preventing the trial court from ensuring that Petitioner's "trial by jury remained inviolate" [*Id.*];

    g. Improperly implied that the State would not have investigated and charged Petitioner unless he was guilty [*Id.*];

      h. Failing to request that the jury be sequestered during trial [*Id.*];

      i. Lying about promises made to witnesses and telling witnesses how to testify [*Id.*];

4. The trial court erred by:

      a. Violating the separation of powers doctrine [*Id.* at 6];

      b. Injecting its own personal opinion into the proof and finding facts that were not supported by evidence [*Id.* at 7];

      c. Allowing irrelevant, inadmissible, and false evidence to be presented to and considered by the jury [*Id.* at 7–8];

      d. Failing to properly voir dire potential jurors concerning their inherent biases and prejudices against Petitioner [*Id.* at 8];

      e. Failing to dismiss the case after the prosecutor admitted to failing to adhere to Tennessee Rule of Criminal Procedure 16 [*Id.*];

      f. Empaneling a jury "that did not represent a fair and reasonable relation to the number of persons in the community." [*Id.*];

      g. Repeatedly and improperly defining "reasonable doubt" [*Id.*];

      h. Failing to dismiss the indictment when the prosecutor said Petitioner did not have the intent to kill [*Id.*];

      i. Failing to recuse itself after denying Petitioner a fair trial [*Id.*];

      j. Failing to grant trial counsel's motion for bill of particulars [*Id.*];

      k. Entering the jury room while the jury was deliberating [*Id.*];

      l. Failing to instruct the jury with all possible lesser-included offenses [*Id.* at 9];

      m. Falsely certifying that the trial record was complete when the transcripts did not include the voir dire of the jury, which rendered Petitioner's judgments void [*Id.*].

## V.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel but to "reasonably

effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the proceedings unfair and the result unreliable. *Id*. In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Id.* at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

When a petitioner raises an ineffective assistance of counsel claim in a § 2254 petition, the Court must review the state court's ruling on that claim under the highly deferential standard of the AEDPA. Thus, in order to succeed on a federal claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that the state court's ruling on his ineffective assistance of

counsel claim was an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

    A.    **INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Petitioner raises seventeen allegations of ineffective assistance of trial counsel [Doc. 2]. Respondent argues that these claims are procedurally defaulted, as Petitioner failed to properly present them "to the higher state court" [Doc. 19 p. 17]. Petitioner concedes that the claims are defaulted but asserts that because post-conviction counsel failed to raise these claims, the default is excused under the *Martinez* exception, which holds that the ineffective assistance of state post-conviction counsel may establish cause to excuse the procedural default of a claim of ineffective assistance of trial counsel, thereby allowing review of the federal claim. *Martinez v. Ryan*, 566 U.S. 1 (2012).

A petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman*, 501 U.S. at 732. A procedural default forecloses federal habeas review, unless a petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* at 732. Where a 2254 petitioner could only raise a claim for a trial attorney's ineffective assistance of counsel for the first time in post-conviction proceedings, however, ineffective assistance of post-conviction counsel may be "cause" to excuse the procedural default of such a claim. *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014); *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013);

10

*Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012). This exception applies to post-conviction proceedings in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

In the instant matter, Petitioner is not entitled to relief under the *Martinez* exception because the default of these claims occurred on post-conviction appeal. After a review of the record, the Court finds that Petitioner's ineffective assistance of counsel claims are taken verbatim from his pro se amended petition for post-conviction relief [Doc. 19 p. 18, *citing* Doc. 2 and Doc. 18 Attachment 51]. At the post-conviction hearing, post-conviction counsel informed the post-conviction court that Petitioner was "going to go forward on all those issues" raised in his pro se petitions for post-conviction relief, along with the claims in any other amended petition [Doc. 18-52 p. 55]. The post-conviction court confirmed Petitioner's request, thus indicating that all allegations would be addressed [*Id.*].

Following testimony by trial counsel and Petitioner, the post-conviction court found that Petitioner had not presented any evidence that would indicate that trial counsel was in any way ineffective [Doc. 18–52 p. 62]. In fact, the Court described trial counsel as "vigorous" and who "works hard to figure out new angles and to try to find the weakness in the State's case and to try to argue the law whenever it is possible to do so" [*Id.*]. The Court further found that the proof in this case at trial "was so overwhelming" that "no changing by [trial counsel] of what she did could possibly be expected to change the outcome of the trial" [*Id.* at 63]. As such, post-conviction relief for ineffective assistance of trial counsel on all claims was denied and the petition was dismissed [*Id.*].

Thereafter, Petitioner did not raise any of these claims in his post-conviction appeal [Doc. 18-53 p. 2-16]. Thus, because the default of the claims occurred on post-conviction appeal,

11

*Martinez* does not apply to excuse the default as Petitioner cannot argue the ineffectiveness of post-conviction counsel to overcome any defaulted claims.

Additionally, to the extent that Petitioner seeks to argue the ineffective assistance of post-conviction counsel as an independent claim, there is no such federal right. The Supreme Court has held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752 (citations omitted); *Wallace*, 570 App'x at 454 ("The Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim."). Accordingly, this claim is not cognizable on federal habeas review and will be denied.

### B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner argues that appellate counsel was ineffective by failing to ensure that a complete and accurate transcript of the trial was prepared for appellate review [Doc. 2 p. 4]. He claims that "the existing transcripts contain numerous inaccuracies concerning actual trial testimony and other occurrences during the trial" and that "the transcripts [are] completely devoid of the voir dire . . . the reading of the indictment, and other portions" [*Id*.]. In opposition, Respondent argues that Petitioner failed to properly present this claim "to the higher state court" and due to the statute of limitations and the "one petition" rule, he may no longer raise this claim [Doc. 19 p. 19].

After a review of the record, this Court finds that the alleged ineffective assistance of appellate counsel claim was never presented to the state courts and a state court remedy is no longer available. Petitioner makes no argument that cause and prejudice exist to excuse the default. As such, although the claim is technically exhausted, it is also procedurally defaulted and Petitioner is not entitled to relief on this claim. S*ee Castille v. Peoples*, 489 U.S. 346, 351–52 (1989)

## VI. PROSECUTORIAL MISCONDUCT

Petitioner makes eight claims of prosecutorial misconduct [Doc. 2]. Respondent argues that Petitioner did not present any of these eight claims to the higher state courts and due to the statute of limitations, he may no longer do so [Doc. 19 p. 20]. Petitioner makes no argument that cause and prejudice exist to excuse the default.

As part of his claims of prosecutorial misconduct, Petitioner argues that the prosecutor withheld "officer's notes," "recording tapes," and "failed to disclose favorable evidenced." [*Id*. at 5] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Respondent correctly notes that Petitioner's *Brady* claim is unsubstantiated [Doc. 19 p. 21]. The Due Process Clause of the Fourteenth Amendment requires that the state disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady*, 373 U.S. at 97). "Even in the absence of a specific request, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Trombetta*, 467 U.S. at 485 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

To establish a *Brady* claim, a petitioner must show that the state withheld exculpatory evidence material to either the petitioner's guilt or punishment. *Brady*, 373 U.S. at 87. The Supreme Court has articulated three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)

(internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (internal quotation marks omitted).

Here, other than general references to "officer's notes," "recording tapes," and "favorable evidence," Petitioner does not identify the particular evidence that was suppressed nor does he explain how any suppressed evidence was relevant and material to his case. Thus, Petitioner has not satisfied the burden to establish a *Brady* claim and cannot excuse the default of the claim. Finding no basis upon which to excuse Petitioner's default, this claim for relief will be denied.

## VII. TRIAL COURT ERROR

Petitioner raises fourteen claims of trial court error [Doc. 2]. However, Petitioner only exhausted one out of the fourteen claims. Specifically, Petitioner presented the claim that trial court erred when it admitted his statement to Lieutenant Lyon into evidence. No other allegation of trial court erred was ever presented on appeal to the higher state court. Thus, due to the statute of limitations and the "one petition" rule, Petitioner may no longer raise the other thirteen claims. Therefore, those thirteen claims are technically exhausted but procedurally defaulted. Petitioner makes no argument that cause and prejudice exist to excuse their default. As such, all claims of trial court error, other than the claim regarding Petitioner's statement to Lieutenant Lyon, will be denied as procedurally defaulted.

### A. PETITIONER'S STATEMENT TO LIEUTENANT LYON

Petitioner asserts that he had not waived his *Miranda*[1] rights at the time he gave a statement to Lieutenant Lyon and the trial court erred when it admitted that statement into evidence [Doc. 2 p. 7]. Respondent argues that the appellate court's finding that Petitioner received a *Miranda*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

14

warning at the beginning of his interview; that he knowingly, intelligently, and voluntarily waived his rights; and officers did not promise Petitioner anything in exchange for his confession was not contrary to, or an unreasonable application of, clearly established federal law or based on unreasonable determination of the facts in light of the evidence present in state court [Doc. 19 p. 23].

The right against self-incrimination is protected both by the Fifth Amendment to the United States Constitution, and the Tennessee Constitution article I, section 9. The TCCA explained that in *Miranda*, 384 U.S. at 444, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Mellon*, 2007 WL 1319370, at *4. These procedural safeguards require that police officers must advise a defendant of his or her right to remain silent and of his or her right to counsel before they may initiate custodial interrogation. *Id. citing State v. Sawyer*, 156 S.W.3d 531, 533 (Tenn. 2005). If these warnings are not given, statements elicited from the individual may not be admitted in the prosecution's case-in-chief. *Id. citing, Stansbury v. California*, 511 U.S. 318, 322 (1994). A waiver of constitutional rights must be made "voluntarily, knowingly and intelligently." *Id. citing*, *Miranda*, 384 U.S. at 444. In determining whether a defendant has validly waived his *Miranda* rights, courts must look to the totality of the circumstances. *Id. citing*, *State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992).

Petitioner argued on appeal that the trial court erred by concluding his initial statement to police on August 25, 1997, was admissible evidence. *Mellon*, 2007 WL 1319370, at *2. Specifically, he contends that his statement was involuntary because it was the product of "promises and representations which led him to believe he was a cooperating witness against his

15

co-defendant, Anthony 'T-Bone' Jones." *Id*. The TCCA, citing *Miranda*, employed a virtually identical version of the totality of the circumstances test outlined above in reviewing Petitioner's claim of involuntary confession. Thus, its conclusion relative to this claim is not contrary to well established Supreme Court precedent. Therefore, the task before the Court is to determine whether the state court's application of clearly-established Supreme Court precedent to the facts of Petitioner's case was unreasonable.

> As recounted by the TCCA:
>
> In a written order, the trial court concluded that [Petitioner] "understood and knew what he was saying" and that he made his initial statement to the officers in an attempt to "cast off the suspicion upon himself and to become a prosecuting witness for others." The trial court concluded that [Petitioner] had been read *Miranda* warnings before he gave his statement to Lieutenant Lyon and Sheriff Hutchison, that [Petitioner] understood his rights, and that he voluntarily waived this rights. The trial court denied [Petitioner's] motion to suppress [these statements].
>
> In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Moreover, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).
> . . .
>
> In this case, the parties do not dispute that a custodial interrogation occurred. Lieutenant Lyon testified that he Mirandized [Petitioner] before the interview, that he never promised [Petitioner] anything or threatened [Petitioner], and that he did not tell [Petitioner] that [Petitioner] and David Jones would testify for the State against Anthony Jones. The trial court obviously accredited the officer's testimony, and our review of the audiotape transcript supports his testimony. Although the beginning of the interview was not audiotaped, the transcript confirms that toward the end of the interview, Lieutenant Lyon made a reference to his having given

16

*Miranda* warnings to [Petitioner] earlier and [Petitioner] acknowledged he had received the warnings. Moreover, during the interview, [Petitioner] never referred to any promise that the police had allegedly made to him. Based upon the totality of the circumstances, we believe the trial court properly concluded that the appellant received *Miranda* warnings at the beginning of the interview; that he knowingly, intelligently, and voluntarily waived his rights; and that the officers did not promise him anything in return for his confession. Therefore, the trial court properly denied [Petitioner's] motion to suppress his initial statement to police.

*Mellon*, 2007 WL 1319370, at *4.

While Petitioner argues he did not waive his *Miranda* rights at the time he gave a statement to Lieutenant Lyon, Petitioner has not provided any evidence to diminish the deference owed to the state court's factual findings under § 2254(d). Rather, the evidence in the record indicates otherwise. The TCCA described the overwhelming evidence to support their decision as follows:

At a hearing on the motion [to suppress statement given to Lieutenant Lyon], Lieutenant Lyon testified that on the afternoon of August 25, 1997, police officers arrested [Petitioner] at home, brought him to an area off Baxter Avenue, and put [Petitioner] into the backseat of Sheriff Hutchison's police vehicle. Sheriff Hutchison was sitting in the front driver's seat, and Lieutenant Lyon was sitting in the front passenger seat. Lieutenant Lyon told [Petitioner] who he was and that he was investigating a shooting at the Cone Station on Lovell Road. Lieutenant Lyon told [Petitioner] that he believed [Petitioner] had been involved in the shooting and wanted to speak with him about it. Lieutenant Lyon said he then read the appellant *Miranda* warnings from a card.

Lieutenant Lyon testified that [Petitioner] said he understood his rights and that they had an audiotaped conversation about the shooting. Lieutenant Lyon asked [Petitioner] about the other suspects and about the crime, and [Petitioner] told the officers "what went on." Lieutenant Lyon stated that [Petitioner] never asked for an attorney and never said he did not want to speak with them. [Petitioner] was "kind of nervy but super nice" and was very cooperative. Lieutenant Lyon said [Petitioner] appeared to understand what was going on and did not appear to be under the influence of an intoxicant.

On cross-examination, Lieutenant Lyon testified that he did not take notes during the interview and that the audiotape did not record his entire conversation with [Petitioner]. He stated that when [Petitioner] first arrived at the location on Baxter Avenue, Lieutenant Lyon did not have a tape recorder and had to call for another officer to bring him one, which took five to ten minutes. He acknowledged that he talked with [Petitioner] "at length" before he received the tape recorder. He said that to his knowledge, he did not talk with [Petitioner] about [Petitioner's] being a

17

prosecution witness for the State. He also denied telling [Petitioner] that [Petitioner] and David Jones were going to testify as witnesses for the State and denied making any threats or promises to [Petitioner]. He acknowledged that he and Sheriff Hutchison did not have [Petitioner] sign a written waiver of rights form. He said that Sheriff Hutchison also spoke with [Petitioner] but that he did not remember what Sheriff Hutchison said to [Petitioner].

[Petitioner] testified that he could read and write but had only a ninth-grade education. On the afternoon of August 25, 1997, police officers came to his home, arrested him, and took him to speak with Lieutenant Lyon and Sheriff Hutchison. The interview took place in the sheriff's police vehicle. [Petitioner] stated that he also talked with "some officer" about "me and Mr. Jones being prosecution witnesses in exchange for them to come and testify in our trials." He stated that he believed the police were "going to come and help us" and were promising to testify for him in court. He stated that no one read him *Miranda* warnings before his interview with Lieutenant Lyon and Sheriff Hutchison and that his conversation with the officers began "way before the tape was turned on."

On cross-examination, [Petitioner] testified that he did not remember who made the promises to him and that he would not have spoken with the officers had the promises not been made. He acknowledged that according to a transcript of the audiotaped conversation, Lieutenant Lyon referred to having read [Petitioner] *Miranda* rights. However, [Petitioner] did not remember being Mirandized. He stated that he also asked for an attorney but that his request was not on the audiotape. He stated that he spoke with Lieutenant Lyon and Sheriff Hutchison for about an hour and that he told them the truth. However, he later acknowledged that he did not tell the officers the whole truth at that time. He stated that he also gave a statement to Officer Darrell Johnson later that evening and that he gave a third statement to police the next day. The appellant acknowledged that he signed written waiver of rights forms for both of those interviews.

At trial, the State played the audiotape for the jury and introduced the transcript of the taped conversation into evidence. According to the transcript, [Petitioner] told the officers that David Jones drove the group to west Knoxville and that Anthony Jones ordered David Jones to stop the car near the victim's car. Anthony Jones got out, walked up to the victim, told the victim to "give me all your shit," and shot the victim. [Petitioner] told the officers that at the time of the shooting, he and David Jones were sitting in David Jones' car. The transcript shows that toward the end of the interview, Lieutenant Lyon asked [Petitioner], "I've read you your rights and you understand your rights, correct?" and [Petitioner] answered, "Yeah." At the end of the interview, Lieutenant Lyon asked [Petitioner], "And you've given me a voluntary statement uncoerced or anything, correct?" and [Petitioner] answered, "Right."

*Mellon*, 2007 WL 1319370, at *2–4.

Based on the evidence in the record, the Court cannot find that the state's determination of the facts was unreasonable. The ruling by the state court deeming Petitioner's statement voluntary and admissible followed the AEDPA standard and was neither contrary to, nor an unreasonable application of federal law. Petitioner is therefore not entitled to relief on this claim.

## VIII. INSUFFICIENT EVIDENCE

Petitioner contends that there was insufficient evidence to convict him of felony murder [Doc. 2 p. 10]. After a review of the state records, however, this Court finds that Petitioner did not raise this claim for relief in the state court and is no longer able to do so. Petitioner has technically exhausted this claim because there are no state court remedies currently available. *Castille*, 489 U.S. at 351 (the requirement of exhaustion is satisfied if it is clear that petitioner's claims are now procedurally barred under state law). Petitioner makes no argument that cause or prejudice exist to excuse the default, therefore, forfeiting the right to federal habeas review of the procedurally defaulted claim. Accordingly, this claim is procedurally defaulted and will be denied.

## IX. CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## X. CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

19

would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484. After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted. Further, in view of the law upon which the dismissal on the merits of the adjudicated sub-claim is based, reasonable jurists could not disagree with the correctness of the Court's resolution of this claim. Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims are inadequate to deserve further consideration, and the Court will **DENY** issuance of a COA. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

    **A SEPARATE JUDGMENT ORDER WILL ISSUE.**

_____
**UNITED STATES DISTRICT JUDGE**